## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed December 1, 1915.

ERNEST A. STUERKEN, GEORGE SCHAMBERGER, GEORGE A. FRICK, FRANK FRICK, JR., JOHN THOMAS SCHEU, ATLANTIC SAND & GRAVEL COMPANY

VS.

JOHN C. ROTH AND HENRY HERTEL.

*Frank G. Turner* for complainants.
*William Colton* for defendants.

HEUISLER, J.—

In the case of Roth vs. Stuerken, 124 Md., 409, the Court in commenting upon the Bill of Complaint, which is the inquiry in this case, states that "the *fountain head* of the entire bill is the agreement," and that the "entire question to be determined is whether or not the agreement, *entered into by all the parties*, has been broken and violated by the two defendants; one in one manner and the other in another." This statement reduces the present inquiry to the following findings:

a. Was there an agreement.

b. Was it entered into by all the parties.

c. Was it broken by defendant, John C. Roth.

d. Was it broken by defendant, Henry Hertel; and

e. What relief follows the affirmative finding of above propositions.

The testimony is voluminous, but being carefully examined and considered, the conclusion of the Court is from the evidence necessarily as follows:

1. The fact of the agreement is fully established that agreement can be characterized, *from the substance of the testimony*, as an undertaking, *promotion, scheme* or enterprise for the formation of a corporation for the purpose of carrying on the sand and gravel business; and the associates were to do all that they could for the enterprise and were to share in the enterprise such profits as arose from it.

2. This enterprise or scheme was specifically entered into and its terms agreed upon by all of the plaintiffs and the defendant Hertel; and it was adopted, accepted and approved by the defendant, Roth, at many admitted conferences held between the parties at which he was present; it was not questioned or denied in the answer filed by the defendant Roth; and in the story of the enterprise as evidenced by prospectus, records of promoters' meetings, and of incorporators' meetings, he signed and joined in the issuance of the prospectus and attended and approved the meetings. Under

this agreement, the parties thereto, as appears from the evidence, specifically agreed upon an equal division of the profits and losses. However, had not this specific agreement appeared so evident in the testimony, it would have followed as matter of law unless it had been changed by express stipulation of the parties. A partnership (and this proven agreement is a partnership for a specific adventure) imparts a communion of profits and losses among its several members; but the partners may agree among themselves upon a disproportionate interest as to such profits and losses. The rule of law is that partners share equally in profits and losses; but this presumption is not irresistible. It is a question of intention and can be controlled by stipulation between the parties.

Welch vs. Canfield 64 Md. 474.

Fleischman vs. Gottschalk 70 Md. 524.

These profits of partnership *must be equally* divided between the partners, however unequal may be their respective contribution of capital or services, in the absence of agreement expressed or implied to the contrary.

30 Cyc., 451, and cases cited.

There is no evidence in the record at all of any agreement or stipulation between the parties by which this rule of law is either expressly or impliedly changed or avoided.

3. This agreement and the terms thereof have been broken and disregarded by the defendant, Roth, in his dealings with all of the plaintiffs. The record shows that the corporation, as contemplated, was effected; that unsuccessful efforts were made to prolong corporate life by subscriptions to capital stock; that certain options were by agreement of all the parties sold and disposed of by the defendant, Roth, and that he has remaining in his hands a certain sum of money after the repayment to him of certain cash advances made in promotion of the scheme or enterprise, which sum he attempts to dispose of in an arbitrary manner, in disregard of the legal rights of his associates.

4. This agreement and the terms thereof have been broken and disregarded by the defendant, Henry Hertel. (The record shows that since the close of the transaction and the insti-

tution of these proceedings the said defendant has departed this life, and that his personal representatives is now made party defendant.) In Hambleton vs. Rhind, 84 Md., at page 487, it is stated that as respects persons composing a *syndicate*, which is an *association* of *individuals* formed for the purpose of conducting and carrying on some particular business transaction, ordinarily of a financial character, in which the members are mutually interested, "it is a partnership and in so far as these same persons are concerned the legal obligations assumed by them are, as between themselves, substantially the same as those which the law imposes on the members of an ordinary partnership. *Scrupulous good faith* is naturally, if not necessarily, implied from the very nature and character of the relation of partnership; and consequently, intrigues by one member for a private benefit to himself are clearly offenses against the partnership at large and as such are relievable in a Court of Equity." The defendant, Hertel, while a member of the Syndicate, received the sum of $1,871.25 as commissions from the Rayner and Mason Estates, the same estates from which the options were had for the benefit of his partners and associates in said syndicate, and applied said sum to his personal use in violation of his legal duties as a member of said syndicate, and he or his estate must be held to account for the same.

5. In view of the above findings, the Court is of opinion that the defendant, Roth, must equally account to his associates for their respective and proper shares of the profits remaining in his hands from the sale of the options mentioned in the evidence; that these must be included in said accounting of profits the sum of $2,100, paid by him on December 26, 1912, by his check No. 3506, to Henry Hertel for commissions, there being no evidence in the case of any authority for such payment out of said profits; and that the estate of the deceased defendant, Henry Hertel, must account for and return to this case for its proper distribution the aforesaid sum of $1,871.25 received by the said Henry Hertel in his lifetime. It is shown by the evidence that the defendant, John C. Roth, advanced in cash for the benefit of the enterprise the following sums:

| | |
|---|---|
| January 29, 1912 | $2,500.00 |
| June 1, 1912 | 1,700.00 |
| June 1, 1912 | 500.00 |
| June 10, 1912 | 175.00 |
| July 30, 1912 | 500.00 |
| August 1, 1912 | 1,000.00 |
| September 28, 1912 | 1,000.00 |
| October 1, 1912 | 1,500.00 |
| November 1, 1912 | 1,000.00 |
| | |
| A total of | $9,875.00 |

for account of options and incorporation costs, and in addition the sum of $640, to the Mason Estate for interest, and the respective sums of $20 and $25 for surveys, making a total payment, outside of any payments made by him to his associates, of $10,550.

The defendant, Roth, received from Messrs. Benzinger and Calwell on the 23rd of December, 1912, the sum of $18,890, *said sum representing*, after the deduction by Roth of his payments as above set down, of $10,550, *a profit for the enterprise* of $8,340.

This is the actual difference between the money paid in by him, and the money received by him, with no allowance for the interest thereon during its use by the syndicate or association. The Court is of the opinion that under the circumstances detailed in the testimony, that legal interest should be allowed to the defendant, Roth, on all the advances made by him from *the date of such advances to December* 23, 1912, and that a *similar allowance of interest* should be made on any other advances *made by some of the plaintiffs*. The record shows that the (a) *plaintiff*, Schamberger, advanced the sum of $200, *about Nov.* 3, 1911, *the time of First Option*, and was repaid about Dec. 23, 1912, and he will be allowed interest on that sum accordingly; (b) *the plaintiff, Scheu*, advanced the sum of $150 about Nov. 3, 1911, and was repaid about Dec. 23, 1912; *and also that plaintiff Scheu* advanced the sum of about $213 for the Franchise Tax, which sum has not been repaid as yet, and on which he will be allowed interest from time of his original outlay to date of repayment; (c) *that plaintiff, Stuerken*, and that defendant, *Hertel*, advanced jointly the sum of $450 (the discounted note) on which interest is to be allowed to time of the repayment of said advances; these advances by plaintiffs and the defendant, Hertel (outside of the fran-

chise tax paid by Scheu) represent the total advance of $800 mentioned in the evidence.

It appears from the evidence that the defendant Roth made the following payments to his associates:

Dec. 23, 1912, to Geo. A. Frick. $300.00
Dec. 23, 1912, to E. A. Stuerken 200.00
Dec. 18, 1912, to E. A. Stuerken 300.00
Dec. 27, 1912, to E. A. Stuerken 750.00
Dec. 28, 1912, to Henry Hertel. 350.00

The interest on the advances made by the defendant, Roth, after computation, is to be added to said advances and then principal and interest are to be deducted from the sum of $18,890; and from the balance then remaining is to be deducted the advances of $800 and interest made by the other associates as hereinbefore recited, and the sum of $213 paid for franchise tax with interest from date of payment— *and then the second balance remaining in the hands* of the defendant, Roth, *is to be divided into seven equal parts* and is to be paid by said Roth, as follows:

One-seventh to Ernest A. Stuerken.

One-seventh to John Thomas Scheu.

One-seventh to George A. Frick.

One-seventh to George Schamberger.

One-seventh to Frank Frick, Jr., or representative.

One-seventh to Henry Hertel or representative.

One-seventh to John C. Roth.

As against each above distributive share, the said defendant, Roth, is to be allowed all such sums as may have already been paid by him to the respective distributees, except the sum of $2,100 paid to Henry Hertel on December 26, 1912; and the said Roth will be charged with legal interest on any balance found to be due to any of said distributees from December 23, 1912, to date of payment; the said defendant, Roth, will pay to the plaintiff, John Thomas Scheu, in cash, also the sum of six-sevenths of $213, the franchise tax advanced by said Scheu, with interest.

As against the distributee share of the defendant Henry Hertel, as appears above, the said defendant, Roth, will be allowed the same as a credit on the sum of twenty-one hundred dollars advanced to said Hertel on December 26th, 1912.

The Estate of the said Henry Hertel, deceased, shall return to and pay into this Court the sum of $1,871.25 for distribution as follows, without interest:

One-seventh to Ernest A. Stuerken.

One-seventh to John Thomas Scheu.

One-seventh to George A. Frick.

One-seventh to George Schamberger.

One-seventh to Frank Frick.

One-seventh to John C. Roth.

One-seventh to Estate of Henry Hertel.

In the matter of the exceptions filed to the questions and the motions to strike out the answers thereto in the testimony of the witness Frank Frick, Jr., the *ruling of the Court will be that* exceptions numbered 9, 10, 11, 12, 13, 14, 15, 18 and 21, respectively, *will be overruled and motions refused;* as to all other exceptions formally filed by motion on October 11, 1915, the exceptions will be sustained and the motions granted and the testimony stricken out and suppressed as therein prayed.

A decree will be passed in accordance with the above rulings and findings—the cost of these proceedings to be paid by the defendants in equal proportions.